FILED
JAMES BONINI
CLERK

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

11 JAN -5  AM 10: 50

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

| | |
|---|---|
| **JOHN SINCLAIR** | : **Civil Action No** |
| **Plaintiff,** | : |
| | : |
| **-vs-** | : **Judge** |
| | : |
| **SHAUN DONOVAN, SECRETARY OF** | : **COMPLAINT** |
| **THE UNITED STATES DEPARTMENT** | : |
| **OF HOUSING AND URBAN** | : **Jury Demand** |
| **DEVELOPMENT,** | : |
| **-and-** | : |
| **DAVID STEVENS, ASSISTANT** | : |
| **SECRETARY OF THE UNITED** | : |
| **STATES DEPARTMENT OF** | : |
| **HOUSING AND URBAN** | : |
| **DEVELOPMENT,** | : |
| **-and-** | : |
| **THE UNITED STATES DEPARTMENT** | : |
| **OF HOUSING AND URBAN** | : |
| **DEVELOPMENT,** | : |
| **-and-** | : |
| | : |
| **BANK OF AMERICA, N.A.** | : |
| | : |
| **-and-** | : |
| | : |
| **BAC HOME LOANS SERVICING, LP,** | : |
| | : |
| **Defendants.** | : |

`1:11 CV 010`

`SPIEGEL, J.`

## <u>COMPLAINT</u>

COMES NOW Plaintiff John Sinclair (hereinafter "Mr. Sinclair"), by and through

counsel, and for his complaint against Shaun Donovan, Secretary of the United States Housing

and Urban Development, David Stevens, Assistant Secretary of the United States Housing and

Urban Development, the United States Housing and Urban Development, Bank of America, N.A. and BAC Home Loans Servicing, LP, alleges as follows:

## I.  PRELIMINARY STATEMENT

1. In 1934, Congress created the Federal Housing Administration ("FHA"), which has become the largest mortgage insurer in the world.  In 1965, FHA became a part of the Department of Housing and Urban Development's (HUD) Office of Housing.  FHA administers the Single Family Housing Program, which provides mortgage insurance on loans to purchase new or existing homes.

2. The purpose of the Federal Housing Administration's (FHA) single family homeowner mortgage program is to make it possible for many American families to own their own homes. The statutory and regulatory scheme provides mortgage insurance and other incentives to lenders to finance homeowner loans.  In exchange for these valuable incentives, FHA lenders are required to make numerous efforts to help borrowers avoid foreclosure who experience a default.

3. As a borrower with a mortgage insured by the Federal Housing Administration (FHA), Mr. Sinclair is entitled to specific efforts by his lender to help him avoid foreclosure.  The federal regulations that spell out these specific efforts are incorporated directly into his contract with his lender.

4. His lender, Bank of America, did not comply with federal regulations and contractual terms regarding foreclosure alternatives.  Upon information and belief, Bank of America made adverse and erroneous decisions on these foreclosure alternatives without providing Mr. Sinclair notice or an opportunity to challenge these decisions.

5. The federal Department of Housing and Urban Development has failed to protect Mr. Sinclair's entitlement to foreclosure alternatives from deprivation without the Due Process guaranteed by the Fifth Amendment of the United States Constitution.

6. Under the current system, the Department of Housing and Urban Development allows lenders to proceed to foreclosure and recover their losses through the insurance funds without ensuring that the borrowers' Due Process rights are protected and that unnecessary foreclosures are avoided.

## II.    JURISDICTION AND VENUE

7. The Court has jurisdiction over all Defendants pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims against all Defendants under the U.S. Constitution.

8. Under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the state law claims asserted against Defendants Bank of America, N.A. and BAC Home Loans Servicing, L.P. because these claims are so related that they form part of the same case or controversy.

9. This Court also has jurisdiction over Defendants Bank of America, N.A. and BAC Home Loans Servicing, L.P. because Plaintiff and these Defendants are citizens of different States, and the matter in controversy, without interest and costs, exceeds $75,000 as specified in 28 U.S.C. § 1332(a).

10. Venue is proper under 28 U.S.C. § 1391(a), because a substantial part of the event or omissions giving rise to the claims occurred in the Southern District of Ohio, and the property that is the subject of this action is located in the Southern District of Ohio.

## III.   PARTIES

11. Plaintiff John Sinclair is a resident of the State of Ohio and at all times relevant to this action lived in his home at 4031 Fawnhill Lane, Cincinnati, OH 45205.  He purchased his home in

2000 through the FHA Single Family Insured Mortgage Program.  Loans originated under this program shall be referred to collectively as "HUD-FHA loans."

12. Defendant Shaun Donovan is the Secretary of the United States Department of Housing and Urban Development (HUD), who is responsible for the overall administration of the HUD programs, including the FHA Insured Mortgage program.  Mr. Donovan is sued in his official capacity only.

13. Defendant David Stevens is the Assistant Secretary for Housing at HUD and the FHA Commissioner.  He has direct responsibility for oversight and administration of the FHA Insured Mortgage Program.  Mr. Stevens is sued in his official capacity only.

14. Defendant United States Department of Housing and Urban Development (HUD) is the federal agency responsible for administering the FHA Insured Mortgage Program.

15. Defendants Donovan, Stevens, and HUD shall be referred to collectively as "HUD."

16. Defendant Bank of America, N.A. is an American financial conglomerate incorporated under the laws of the State of Delaware authorized to do business in the State of Ohio.

17. Defendant BAC Home Loans Servicing, LP is a wholly-owned subsidiary of Bank of America, N.A. incorporated under the laws of the State of Texas and authorized to do business in the State of Ohio.  It is a servicing company that provides the daily maintenance of mortgage loans on behalf of Bank of America.

18. Defendant Bank of America, N.A. and Defendant BAC Home Loans Servicing, LP shall be referred collectively as "Bank of America."

4

## IV.    STATEMENT OF THE CASE

### A. Statutory and Regulatory Framework

  i.      FHA Loss Mitigation Entitlement Program

19. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

20. The FHA Insured Mortgage Program provides insurance to cover losses incurred by the mortgagee in the event of default and foreclosure.

21. A mortgagee who has a loss due to a foreclosure can make a claim to HUD and become whole from insurance proceeds.

22. Because of these incentives and insurance, only mortgagees approved by HUD as "responsible and able to service the mortgage properly" may originate or hold HUD-FHA mortgages. 12 U.S.C. § 1709(b).  Upon information and belief, Bank of America is an "approved mortgagee."

23. According to the National Housing Act, "[up]on default or imminent default . . . of any mortgage insured under this subchapter, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure. . . ." 12 U.S.C. § 1715u.

24. Pursuant to its authority under the National Housing Act, HUD has issued regulations, handbooks, mortgagee letters, and other guidance in regard to servicing and foreclosing on mortgages that the agency insures.

25. The regulations ensure that the mortgagee takes steps to avoid unnecessary foreclosures of HUD-FHA loans and loss to the government.

26. Federal regulations regarding the lender's duties to avoid foreclosure are located at 24 CFR §§ 203.500 - .681. The comprehensive loss mitigation program to avoid foreclosure is called FHA's Loss Mitigation Program.

27. Under 24 CFR § 203.501, a lender "must consider the comparative effects of their elective servicing actions, and must take those appropriate actions which can reasonably be expected to generate the smallest financial loss to the Department." The regulation then lists the specific options that the lender must consider to minimize loss, which include, but are not limited to, deeds in lieu of foreclosure, pre-foreclosure sales, partial claims, assumptions, special forbearance, and recasting of mortgages.

28. The regulation at 24 CFR § 203.602 specifies the notices that a borrower must receive from the lender if the borrower becomes delinquent on the mortgage loan.

29. Under 24 CFR § 203.604, "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." The regulation describes actions that amount to a "reasonable effort" and these include a certified letter and at least one trip to the borrower's home.

30. 24 CFR § 203.605 requires lenders to review the techniques listed in 24 CFR § 203.501 on a periodic basis before the loan falls four months behind.

31. Before initiating foreclosure, the lender must ensure that all servicing requirements have been met according to 24 CFR § 203.606.

32. In addition to the regulations, HUD has promulgated handbooks on loss mitigation, including HUD Handbook 4330.1, "Administration of Insured Home Mortgages."

33. Moreover, HUD issues mortgagee letters that address specific loan servicing topics.

6

34. Mortgagee Letter 2000-05 provides further details for servicers considering borrower eligibility for loss mitigation.

35. HUD described its rules for loan modifications in Mortgagee Letter 2009-35, which amended its previous policy.  The policy allows for reduction of interest rate, and it does not exclude certain borrowers based on the number of months that they are behind.

36. Finally, through Mortgagee Letter 2009-23, HUD released its version of the Home Affordable Modification Program (FHA-HAMP).  The agency issued its FHA-HAMP guidelines pursuant to the "Helping Families Save Their Homes Act of 2009."  P.L. 111-22 (May 20, 2009). The goal of the program is to provide homeowners with a greater opportunity to reduce their mortgage payments to a sustainable level. For homeowners who qualify, FHA-HAMP results in a monthly house payment of 31% of the family's gross income.

37. According to the mortgagee letter, FHA-HAMP became a mandatory loss mitigation tool for review on August 15, 2009.

38. In addition to their place in the relevant regulatory scheme, the regulations promulgated by HUD are incorporated into contractual terms of an FHA insured Note and Mortgage, including those at issue in this case.

39. Paragraph 6 of an FHA-insured Note states that "[i]n many circumstances regulations issued by the Secretary [of HUD] will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations."

40. Paragraph 9 of an FHA-insured Mortgage states that "[i]n many circumstances regulations issued by the Secretary [of HUD] will limit Lender's rights, in the case of payment defaults,

to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."

41. The purpose of the above described regulatory scheme is to give financially distressed homeowners with HUD-FHA loans an opportunity to avoid foreclosure and retain their homes through loss mitigation initiatives.

    ii.    <u>HUD Oversight of a Lender's Provision of Loss Mitigation Entitlements</u>

42. Under its program, HUD delegates to lenders the authority for determining whether a borrower is eligible for loss mitigation options. The lender collects the relevant documents and performs the analysis under the regulations and rules that HUD provides. Because of these obligations, the lender is subject to an extensive reporting and oversight program.

43. Mortgagee Letter 2006-15 announced HUD's enhanced requirements for reporting all HUD-FHA mortgages that are 30 or more days delinquent. This information is sent to HUD's Single Family Default Monitoring System (SFDMS). The SFDMS system collects and tracks significant loss mitigation activity from the beginning of the default to its resolution. All activity taken by a mortgagee under the Program is required to be properly coded under an extensive reporting system developed by HUD.

44. As part of the annual certification process, lenders must each year affirm that they are following the rules and regulations described above. In its certification, the lender must state: "I certify that the lender complied with and agreed to continue to comply with HUD-FHA regulations, handbooks, Mortgagee Letters, Title I Letters, policies, and terms of any agreements entered into with the Department." See Attachment to Mortgagee Letter 2009-25.

45. In 2000, HUD implemented the Tier Ranking System (TRS) in an effort to measure a mortgagee's utilization of the Loss Mitigation Program.  On a quarterly basis, HUD releases TRS rankings.  These rankings determine whether a mortgagee is entitled to additional incentives or whether a mortgagee should be subject to training, investigation or audit.

46. Despite the detailed guidance and regulations supplied by HUD and the incorporation of the regulations into the borrowers' contract, HUD has not provided any guidance or regulations requiring notice to the borrower of adverse decisions made under the FHA Loss Mitigation Program or an opportunity to challenge such decisions.

47. Without such notice and a meaningful opportunity for borrowers to dispute the decisions by mortgagees, the FHA Loss Mitigation Program maintains its incentive system rewarding mortgagees for proceeding directly to foreclosure without complying with the Loss Mitigation Program and allows full reimbursement of the unpaid principal balance and costs. With a completed foreclosure, the mortgagee can transfer the vacant home to HUD, which then becomes responsible for its daily maintenance and upkeep.

**B.  Statement of the Facts**

48. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

49. Mr. Sinclair bought his home at 4031 Fawnhill Lane, Cincinnati, Ohio for himself, his long-time partner Vaida Stacy and their children, in June 2000.  Although not on the Note or Mortgage, Ms. Stacy is an authorized party on the mortgage account.

50. Mr. Sinclair purchased the home with a HUD-FHA loan as administered by the Department of Housing and Urban Development ("HUD") (copies of Mr. Sinclair's Note and Mortgage as received by the lender are attached as Exhibits A and B respectively).  Pursuant to rules

9

and regulations for HUD-FHA loans, Mr. Sinclair is required to pay insurance premiums each month to HUD through the escrow account that Bank of America has established for him.

51. Mr. Sinclair has worked in the construction industry as a brick and mortar layer for approximately 18 years. He has been employed by the same company throughout that time. Ms. Stacy has been employed at the same company for approximately 11 years.

52. In late 2001, the construction company that has employed Mr. Sinclair began to see a decline in business. The decline hit a low in 2008, and Mr. Sinclair suffered a reduction in his hours for several months in 2008. In addition, Mr. Sinclair was injured in 2008, and spent time off of work on medical leave. Ms. Stacy has remained fully employed at her long time position throughout the time that Mr. Sinclair has faced problems with employment.

53. After the family started to struggle with making payments, Mr. Sinclair and Ms. Stacy contacted Bank of America around fall 2008 to discuss the family's financial hardship and possible options for resolving the problems with the loan. They also sought the assistance of a HUD-certified housing counselor to help them in their correspondence with Bank of America. During that period, Mr. Sinclair and Ms. Stacy continued to make payments to Bank of America when they could.

54. In order to avoid foreclosure, on several occasions, with the first occurring in or around fall of 2008, Mr. Sinclair and Ms. Stacy have provided financial information to Bank of America so that it could consider loss mitigation options.

55. Upon information and belief, Bank of America accelerated Mr. Sinclair's mortgage loan in January 2009. Based upon its acceleration, Bank of America filed for foreclosure in the Hamilton County Court of Common Pleas on August 26, 2009.

56. Bank of America voluntarily dismissed the foreclosure in December 2009 after Mr. Sinclair obtained a lawyer and served discovery on Bank of America. Upon information and belief, Mr. Sinclair's mortgage loan remains accelerated.

57. Upon information and belief, Bank of America took months to evaluate Mr. Sinclair's financial information for any loss mitigation options, and its evaluation of loss mitigation options was inadequate. Mr. Sinclair and Ms. Stacy sent financial information to Bank of America on numerous occasions between fall of 2008 and the present. Bank of America often asked for material that Mr. Sinclair and Ms. Stacy had already provided.

58. Bank of America did not consider Mr. Sinclair for all loss mitigation options on a monthly basis before four months of payments were past due despite the fact that Mr. Sinclair and Ms. Stacy sent financial documents to Bank of America within that window.

59. Upon information and belief, Bank of America stated on multiple occasions between the fall of 2008 and the present, that it had no loss mitigation programs to assist Mr. Sinclair. Instead, Bank of America insisted that full reinstatement was the only option. Upon information and belief, Bank of America made numerous decisions regarding Mr. Sinclair's eligibility for loss mitigation options after he requested assistance.

60. Mr. Sinclair did not receive notice of decisions that Bank of America made with the respect to the loan and the FHA Loss Mitigation Program from either Bank of America or HUD.

61. Because Mr. Sinclair had no notice of any evaluation for loss mitigation options, including a loan modification, he had no opportunity to challenge any mistakes with Bank of America's consideration of income and its determination of Mr. Sinclair's eligibility for foreclosure alternatives. In fact, upon information and belief, Mr. Sinclair was eligible for a loan

modification or FHA-HAMP between the fall of 2008 and the present had Bank of America conducted a proper evaluation of loss mitigation options.

62. Based on the actions discussed above, Bank of America has failed to minimize loss to the government and failed to engage in any reasonable loss mitigation.

63. Despite Mr. Sinclair's efforts to reach an agreement, Bank of America never had a face-to-face meeting pursuant to the Loss Mitigation Program. It did not send a certified letter offering to arrange such a meeting, and, upon information and belief, it never visited the property at issue in order to arrange such a meeting.

64. Mr. Sinclair is financially able to make reasonable mortgage payments at this time and is entitled to a loan modification.

65. Mr. Sinclair has suffered anxiety, severe emotional distress, and financial harm as a result of Bank of America's failures to properly comply with HUD-FHA rules and regulations.

66. Given its failures, Bank of America should be barred from filing a foreclosure and recover any losses from FHA insurance.

<u>**FIRST CLAIM FOR RELIEF: VIOLATION OF DUE PROCESS**</u>
<u>**ALL DEFENDANTS**</u>

67. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

68. Mr. Sinclair has an entitlement to the foreclosure alternatives of the FHA Loss Mitigation Program as detailed in the National Housing Act, the federal regulations, and the relevant HUD Handbooks, mortgagee letters, and other guidelines.

69. HUD provides Bank of America with a complex and detailed regulatory scheme for determining borrower eligibility for the FHA Loss Mitigation Program.

70. Under its program, HUD delegates to lenders, such as Bank of America, the authority for determining whether a borrower is eligible for loss mitigation options. Bank of America collects the relevant documents and performs the analysis under the regulations and rules that HUD provides.

71. The FHA Insured Mortgage Program, including, but not limited to, the FHA Loss Mitigation Program, is a shared undertaking of the federal government and Bank of America. Therefore, in making decisions under the Loss Mitigation Program, Bank of America is acting under the color of law.

72. Because of the nexus between Bank of America and HUD, Bank of America is a government actor with regards to its decisions on the FHA Loss Mitigation Program.

73. Despite the complex and detailed regulatory structure, HUD does not provide any rules, regulations, or guidance to ensure that borrowers receive notice and an opportunity to be heard regarding decisions made by lenders, such as Bank of America, related to the FHA Loss Mitigation Program.

74. Bank of America and HUD follow a practice of not providing adequate notice and an opportunity to be heard regarding the Loss Mitigation Program to homeowners like Mr. Sinclair.

75. Bank of America has failed to provide Mr. Sinclair sufficient notice of its adverse decisions regarding loss mitigation, including, but not limited to, its failure to provide a loan modification.

76. Mr. Sinclair had no opportunity to be heard on his reasons for disputing Bank of America's decision.

77. Bank of America and HUD have violated Mr. Sinclair's right to Due Process under the Fifth Amendment of the United States Constitution for failing to provide sufficient notice and an opportunity to be heard regarding his entitlement to loss mitigation.

**SECOND CLAIM FOR RELIEF: BREACH OF CONTRACT**

**BANK OF AMERICA**

78. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

79. Under his note and mortgage contract with Bank of America, Bank of America is required to follow HUD-FHA regulations prior to accelerating the loan at issue.  It cannot file a foreclosure unless it complies with the FHA Loss Mitigation Program.

80. Bank of America has accelerated the loan, but it has failed to comply with HUD-FHA regulations incorporated in the contract, which include, but are not limited to 24 CFR 203.501 regarding loss mitigation options and minimum loss to the government; 24 CFR 203.604 regarding face-to-face meetings; 24 CFR 203.604 regarding periodic evaluations for loss mitigation; Mortgagee Letter 2009-23 regarding FHA-HAMP; and Mortgagee Letter 2009-35 regarding loan modifications.

81. As a direct and proximate result of Bank of America's failure to satisfy its contractual obligations, Mr. Sinclair has suffered emotional distress and financial damage.

**THIRD CLAIM FOR RELIEF: BREACH OF FIDUCIARY DUTY**

**BANK OF AMERICA**

82. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

83. Bank of America has a fiduciary duty to Mr. Sinclair to properly process the paperwork that he submitted for loss mitigation options.

84. Mr. Sinclair returned financial information on numerous occasions to Bank of America.

85. Mr. Sinclair reasonably relied upon Bank of America's expertise in servicing FHA-insured mortgages to properly process his paperwork and evaluate him under the Loss Mitigation Program.

86. Bank of America failed to process the paperwork and evaluate Mr. Sinclair for his loss mitigation options, and engaged in a series of unreasonable and arbitrary actions harming Mr. Sinclair.

87. Bank of America's actions amount to a breach of fiduciary duty.

88. As a direct and proximate result of Bank of America's breach of fiduciary duty, Mr. Sinclair has suffered anxiety, severe emotional distress, and financial harm and is entitled to recover damages.

## FOURTH CLAIM FOR RELIEF: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### BANK OF AMERICA

89. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

90. Bank of America has a duty of good faith and fair dealing implied in every note and mortgage contract that neither party to the contracts shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of their contract.

91. Bank of America breached its duty by not promptly and reasonably evaluating Mr. Sinclair for his eligibility under the relevant HUD-FHA regulations, handbooks, and mortgagee letters.

92. Bank of America's breach of its duty of good faith and fair dealing was intentional, wanton, reckless, and/or negligent.

93. As a direct and proximate result of Bank of America's breach of its duty of good faith and fair dealing, Mr. Sinclair has suffered anxiety, severe emotional distress, and financial harm and is entitled to recover damages.

## FIFTH CLAIM FOR RELIEF: INFLICTION OF EMOTIONAL DISTRESS
### BANK OF AMERICA

94. Mr. Sinclair incorporates by reference as though fully pleaded herein the preceding paragraphs.

95. Bank of America improperly serviced Mr. Sinclair's loan in a manner that caused emotional distress by, inter alia and as more fully set out above: ignoring FHA mandatory guidelines, providing inconsistent information to Mr. Sinclair, failing to explain available options, evaluating FHA Loss Mitigation in such an untimely manner that Mr. Sinclair lost potential options, failing to inform Mr. Sinclair what options it was considering, and filing foreclosure without considering FHA Loss Mitigation guidelines.

96. Bank of America acted intentionally, recklessly, knowingly, and/or negligently in causing Mr. Sinclair's emotional distress, or Bank of America knew or should have known that their actions would result in Mr. Sinclair's suffering serious emotional distress.

97. Bank of America's conduct was extreme and outrageous.

98. As a direct and proximate result of Bank of America's intentional, reckless and/or negligent infliction of emotional distress, Mr. Sinclair has suffered severe humiliation, distress, depression and anxiety. The loss of his financial well-being, further harm to his credit, and the threatened loss of his family's home are the sources of serious emotional distress.

99. As a result, Bank of America is liable to Mr. Sinclair for actual and punitive damages.

16

**WHEREFORE, Plaintiff** requests that this Court render judgment on Plaintiff's behalf as follows:

1.      Order Bank of America and HUD to create a process to protect the Due Process rights of Mr. Sinclair, which include a process to provide notice of any adverse decisions under the Loss Mitigation Program and an opportunity to be heard;

2.      Award Mr. Sinclair actual and punitive damages against Bank of America in an amount exceeding $75,000 and to be determined at trial on each of Plaintiff's claims for Breach of Contract, Breach of Fiduciary Duty, Breach of Covenant of Good Faith and Fair Dealing, and Infliction of Emotional Distress;

3.      Order Bank of America and HUD to enter into a reasonable loss mitigation and foreclosure prevention option to allow Mr. Sinclair to cure any arrearage and keep the subject property out of foreclosure;

4.      Direct Bank of America to pay the cost of this proceeding, including Mr. Sinclair's attorneys' fees as appropriate; and order HUD to pay Mr. Sinclair's attorneys' fees and costs pursuant to the federal Equal Access to Justice Act.

5.      Award Plaintiff such other relief as the Court deems just and equitable.

Respectfully submitted,

Carrie Dettmer Slye (OSC 0079382), Trial Attorney
Steven Sharpe (OSC 0083408)
John E. Schrider, Jr. (OSC 0014967)
Attorneys for Plaintiff
Legal Aid Society of Southwest Ohio, LLC
215 East Ninth Street, Suite 500
Cincinnati, Ohio 45202
Phone: (513) 362-2776; Fax: (513) 241-1187
E-mails:cdettmerslye@lascinti.org
ssharpe@lascinti.org
jschrider@lascinti.org

17

## JURY DEMAND

Plaintiff hereby demands that all issues of fact in the foregoing Complaint be tried to a jury.

Carrie Dettmer Slye (OSC 0079382)

S:\DAF\CDS\Sinclair, John and Veda 2010\Initial Complaint 010511.docx

18